UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN N. HAGAN,<br><br>  Petitioner,<br> v.<br>CALIFORNIA GOVERNOR<br>ARNOLD SCHWARZENEGGER,<br><br>  Respondent.<br>_____/ | No. C 05-2035 MHP (pr) |
| KEVIN N. HAGAN,<br><br>  Petitioner,<br> v.<br>WARDEN AYERS,<br><br>  Respondent.<br>_____/ | No. C 06-5366 MHP (pr)<br><br>**ORDER DENYING HABEAS PETITIONS** |

**INTRODUCTION**

  Kevin Hagan, a prisoner at San Quentin State Prison, filed pro se actions for a writ of habeas corpus under 28 U.S.C. § 2254 to challenge a 2003 parole denial and a 2005 parole denial. Both matters are now before the court for consideration of the merits of the habeas petitions. The court also considers respondent's motion to strike parts of the traverse in the case challenging the 2003 denial of parole. For the reasons discussed below, the petitions will be denied and respondent's motion to strike will be denied.

**BACKGROUND**

Kevin Hagan was convicted in 1984 in Orange County Superior Court of first degree murder, robbery and first degree burglary. He was sentenced to 25 years to life in prison. Hagan's habeas petitions do not concern that conviction directly, but instead focus on decisions by panels of the Board of Prison Terms ("BPT") finding him not suitable for parole in 2003 and again in 2005. During the pendency of the federal petition concerning the 2003 BPT hearing (i.e., Case No. C 05-2035), another parole hearing was held in 2005, and the BPT again found him not suitable for parole. Hagan filed a new federal habeas petition challenging the 2005 decision (i.e., Case No. C06-5366), and the briefing on that second petition recently concluded. The court therefore now will consider both petitions because they raise many of the same issues, although the court must consider separately each of the decisions.

A.   <u>Case No. C 05-2035 - The Challenge To The 2003 Parole Denial</u>

In Case No. C 05-2035, Hagan challenges the BPT's decision on December 16, 2003. The BPT identified several factors in support of its determination that Hagan was not suitable for parole and would pose a risk of danger to society or a threat to public safety if he was released. The factors identified included the circumstances of the offense, history of unstable relationships, failure to upgrade educationally as recommended by a prior BPT panel, lack of sufficient participation in beneficial self-help and therapy programs, lack of realistic parole plans, and the opposition to parole by the district attorney and the police department from the county of the murder. The specifics regarding the crime and the circumstances supporting the finding of unsuitability are discussed later in this order.

Hagan sought relief in the California courts. The Marin County Superior Court denied his petition for writ of habeas corpus on January 10, 2005 in a reasoned order. <u>See</u> Resp. Exh. 2. The California Court of Appeal summarily denied his petition for writ of habeas corpus and the California Supreme Court summarily denied his petition for review. <u>See</u> Petition, Exhs. E and F.

Hagan then filed his federal petition for writ of habeas corpus. The court construed

the federal petition for writ of habeas corpus to allege that his right to due process was violated because (1) there was not sufficient evidence to support the BPT's decision and (2) the denial of parole violated his negotiated plea agreement.  The court dismissed the claim that the some evidence standard was not the right standard for evaluating the sufficiency of the evidence.  After an unsuccessful motion to dismiss, respondent filed an answer. Petitioner filed a traverse.  The matter is now ready for a decision.

B.      Case No. C 06-5366 - The Challenge To The 2005 Parole Denial

In Case No. C 06-5366, Hagan challenges the BPT's decision on June 29, 2005.  The BPT identified several factors in support of its determination that Hagan was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if he was released.  The factors identified included the circumstances of the offense, the lack of adequate parole plans and the district attorney's opposition.  Resp. Exh. 2, RT 59-61.

Hagan sought relief in the California courts.  The Orange County Superior Court upheld the BPT's decision in a reasoned order.  See Resp. Exh. 6.  The California Court of Appeal summarily denied Hagan's petition for writ of habeas corpus and the California Supreme Court summarily denied his petition for review.  See Petition, Exhs. 7-10.

Hagan then filed his federal petition for writ of habeas corpus.  The court construed the federal petition for writ of habeas corpus to allege that his right to due process was violated because (1) there was not sufficient evidence to support the BPT's decision that he was not suitable for parole and (2) the plea agreement was breached in that he was not released on his minimum eligible parole date in1998.  The court dismissed Hagan's equal protection claim and his challenge to the use of the some evidence standard.  Respondent filed an answer.  Petitioner filed a traverse.  The matter is now ready for a decision.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over these habeas actions for relief under 28 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the challenged actions occurred at San Quentin State Prison in Marin County, California, within this judicial district.  28 U.S.C. §§ 84, 2241(d).

3

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Williams (Terry) v. Taylor, 529 U.S. 362, 409-13 (2000). Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole. See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

**DISCUSSION**

A.   Case No. C 05-2035 - The Challenge To The 2003 Parole Denial

   1.   Sufficiency Of Evidence Claim

      a.   Due Process Requires That Some Evidence Support The Decision

A California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in the parole suitability proceedings. See Sass, 461 F.3d at 1127-28; Board of Pardons v. Allen, 482 U.S. 369 (1987); Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979); Cal. Penal Code § 3041(b).

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision. Sass, 461 F.3d at 1128-29 (adopting some evidence standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)). "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that

1 could support the conclusion reached'" by the parole board. Id. at 1128 (quoting Superintendent v. Hill, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" Id. at 1129 (quoting Superintendent v. Hill, 472 U.S. at 457). The some evidence standard of Superintendent v. Hill is clearly established law in the parole context for purposes of § 2254(d). Sass, 461 F.3d at 1129.

A critical issue in parole denial cases concerns the BPT's use of evidence about the murder that led to the conviction. Two cases provide the guideposts for applying the Superintendent v. Hill some evidence standard on this point. In Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003), the court explained that the value of the criminal offense fades over time as a predictor of parole suitability: "The Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered. . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs, 334 F.3d at 916-17. Biggs upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that "[o]ver time . . . , should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole." Id. at 916. The recent decision of Sass criticized the Biggs statements as improper and beyond the scope of the dispute before the court: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." Sass, 461 F.3d at 1129. Sass determined that the parole board is not precluded from relying on unchanging factors such as the circumstances of the commitment offense or the petitioner's pre-offense behavior in determining parole suitability. See id. at 1129 (commitment offenses in combination with prior offenses provided some evidence to support denial of parole at subsequent parole consideration hearing). The Sass and Biggs decisions are not polar opposites and can be harmonized: the BPT can look at

5

immutable events, such as the nature of the conviction offense and pre-conviction criminality, to predict that the prisoner is not currently suitable for parole (Sass), but the weight to be attributed to those immutable events decreases over time as a predictor of future dangerousness as the years pass and the prisoner demonstrates favorable behavior (Biggs). The one way in which Sass limits Biggs is to put to rest any idea that the commitment crime and pre-offense behavior only support the initial denial of parole. The immutable events may support the decision to deny parole not just at the first parole consideration hearing but also at subsequent hearings. However, Sass did not dispute the principle that, other things being equal, a murder committed 50 years ago is less probative of a prisoner's current dangerousness than one committed 10 years ago. Not only does the passage of time in prison count for something, exemplary behavior and rehabilitation in prison count for something according to Biggs. Superintendent v. Hill's standard might be quite low, but it does require that the decision not be arbitrary, and reliance on only the facts of the crime might eventually make for an arbitrary decision.

Having determined that there is a due process right, and that some evidence is the evidentiary standard for judicial review, the next step is to look to state law because that sets the criteria to which the some evidence standard applies. One must look to state law to answer the question, "'some evidence' of what?"

          b.        State Law Standards For Parole For Murderers In California

California uses indeterminate sentences for most non-capital murderers, with the term being life imprisonment and parole eligibility after a certain minimum number of years. A first degree murder conviction yields a base term of 25 years to life and a second degree murder conviction yields a base term of 15 years to life imprisonment. See In re Dannenberg, 34 Cal. 4th 1061, 1078 (Cal.), cert. denied, 126 S. Ct. 92 (2005); Cal. Penal Code § 190. The upshot of California's parole scheme described below is that a release date normally must be set unless various factors exist, but the "unless" qualifier is substantial.

A BPT panel meets with an inmate one year before the prisoner's minimum eligible release date "and shall normally set a parole release date. . . . The release date shall be set in a

6

1 manner that will provide uniform terms for offenses of similar gravity and magnitude in
2 respect to their threat to the public, and that will comply with the sentencing rules that the
3 Judicial Council may issue and any sentencing information relevant to the setting of parole
4 release dates." Cal. Penal Code § 3041(a).  Significantly, that statute also provides that the
5 panel "shall set a release date unless it determines that the gravity of the current convicted
6 offense or offenses, or the timing and gravity of current or past convicted offense or offenses,
7 is such that consideration of the public safety requires a more lengthy period of incarceration
8 for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal.
9 Penal Code § 3041(b).

10 One of the implementing regulations, 15 Cal. Code Regs. § 2401, provides:  "A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c).  A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d).  A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public."[1]  The regulation also provides that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole.  Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a).  The panel may consider all relevant and reliable information available to it.  15 Cal. Code Regs. § 2402(b).

21 The regulations contain a matrix of suggested base terms for several categories of crimes.  See 15 Cal. Code Regs. § 2403.  For example, for second degree murders, the matrix of base terms ranges from the low of 15, 16, or 17 years to a high of 19, 20, or 21 years, depending on some of the facts of the crime.  Some prisoners estimate their time to serve based only on the matrix.  However, going straight to the matrix to calculate the sentence puts the cart before the horse because it ignores critical language in the relevant statute and regulations that requires the prisoner first to be found suitable for parole.

28 The statutory scheme places individual suitability for parole above a prisoner's

7

1   expectancy in early setting of a fixed date designed to ensure term uniformity. Dannenberg,
2   34 Cal. 4th at 1070-71.  Under state law, the matrix is not reached unless and until the
3   prisoner is found suitable for parole. Id. at 1070-71; 15 Cal. Code Regs. § 2403(a) ("[t]he
4   panel shall set a base term for each life prisoner who is found suitable for parole").  The
5   California Supreme Court's determination of state law in Dannenberg is binding in this
6   federal habeas action. See Hicks v. Feiock, 485 U.S. 624, 629-30 (1988).
7          The California Supreme Court also has determined that the facts of the crime can
8   alone support a sentence longer than the statutory minimum even if everything else about the
9   prisoner is laudable.  "While the Board must point to factors beyond the minimum elements
10  of the crime for which the inmate was committed, it need engage in no further comparative
11  analysis before concluding that the particular facts of the offense make it unsafe, at that time,
12  to fix a date for the prisoner's release." Dannenberg, 34 Cal. 4th at 1071; see also In re
13  Rosenkrantz, 29 Cal. 4th 616, 682-83 (Cal. 2002), cert. denied, 538 U.S. 980 (2003) ("[t]he
14  nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole"
15  but might violate due process "where no circumstances of the offense reasonably could be
16  considered more aggravated or violent than the minimum necessary to sustain a conviction
17  for that offense").
18              c.      Some Evidence Supports The BPT's Decision In Hagan's Case
19         The BPT identified several factors supporting its decision to find Hagan unsuitable for
20  parole, i.e., the circumstances of the offense, history of unstable relationships, failure to
21  upgrade educationally as recommended by a prior BPT panel, lack of sufficient participation
22  in beneficial self-help and therapy programs, lack of realistic parole plans, and the opposition
23  to parole by the district attorney and the police department from the county of the murder.
24  The Marin County Superior Court upheld the decision in a reasoned order. See Resp. Exh. 2.
25  The Marin court stated that some evidence had to support the decision and found that some
26  evidence did support the BPT's decision. See id. at 2-4.  The state court identified the correct
27  legal standard, as evidenced by its citation to In re Rosenkrantz, 80 Cal.App.4th 409, 423
28  (Cal. Ct. App. 2000), reversed on other grounds, 29 Cal.4th 616 (Cal. 2002), which had cited

8

In Re Powell, 45 Cal.3d 894, 902-04 (1988), which in turn cited the Superintendent v. Hill some evidence standard as the proper standard for judicial review of evidentiary sufficiency for parole denial cases. See Powell, 45 Cal.3d at 904. Because the Marin County Superior Court's decision is the last reasoned decision, that is the decision to which 2254(d) applies. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005), cert. denied, 126 S. Ct. 2041 (2006).

### 1. Commitment Offense

The facts of the murder were described in a summary that was read into the record in the 1998 BPT hearing and incorporated by reference into the record for the 2003 hearing.

> Shortly after six a.m. on June 27, 1983 Hagan entered the back door of the Echo Bar in Garden Grove. Witnesses in an apartment building to the rear of the bar heard a gunshot and observed the victim fall to the ground screaming, in the open rear doorway of the bar. The witnesses observed Hagan drag the victim back into the bar, close the door and appear a few seconds later, holding a revolver and a plastic bag. Hagan's crime partner, Tommy Jackson, who was driving the getaway vehicle, fled after hearing the gunshot. Hagan attempted to flee on foot, but was caught after a brief pursuit. Money from the robbery, $13,800, was found in the bag which Hagan was carrying. Hagan disposed of the gun during his flight and it was never recovered. The victim died later at the hospital due to a single gunshot wound to the abdomen.

Resp. Exh. 5 (2/5/98 BPT hearing transcript) RT 5-6, cited in Resp. Exh. 3 (12/16/03 BPT hearing transcript) RT 10.

The BPT considered the circumstances of the murder and concluded that it was carried out in a "vicious and brutal" and "dispassionate and calculated" manner. 12/16/03 RT 74. The BPT said the offense demonstrated "an exceptionally insensitive disregard for human sufferings." RT 74. The BPT thought the robbery motive was inexplicable and very trivial in relation to the murder offense, "no real need other than possibly greed, monetary gains." RT 74.

A circumstance tending to indicate unsuitability for parole is that "the prisoner committed the offense in an especially heinous, atrocious or cruel manner." 15 Cal. Code Regs. § 2402(c)(1). The factors to be considered in determining whether that circumstance exists are that there were multiple victims, "[t]he offense was carried out in a dispassionate and calculated manner, such as an execution-style murder," "[t]he victim was abused, defiled

1  or mutilated during or after the offense," "[t]he offense was carried out in a manner which
2  demonstrates an exceptionally callous disregard for human suffering," and "[t]he motive for
3  the crime is inexplicable or very trivial in relation to the offense."  15 Cal. Code Regs. §
4  2402(c)(1).  The BPT considered a circumstance and factors proper under California law.

There was some evidence to support the BPT's determination that the circumstances of the murder indicated unsuitability.  The record also supported a determination that the murder was committed in a dispassionate and calculated manner and demonstrated an exceptionally callous disregard for the victim's suffering.  There was evidence of a well-planned robbery rather than a spur-of-the-moment event, as Hagan had lined up a getaway driver and went to the bar with a gun expecting to obtain an extremely large amount of money, i.e., about $31,000.  The record also supported the finding that the robbery was a trivial motive in relation to the taking of the human life.  There was no evidence the victim offered any resistance; in fact, the evidence supports an inference that the victim was attempting to flee when he was shot by Hagan.  Hagan then dragged the victim back inside to die while he took the money and fled.  Hagan's statements that he had become involved with bad people and was trying to be a "gangster" because he thought it was "cool" when he committed the murder also support a finding of triviality of motive.  See RT 11.  The BPT identified more than the minimum elements of a first degree murder when it determined that the facts of the murder showed Hagan's unsuitability for parole.

### 2. History of Unstable, Tumultuous Relationships

The BPT also relied on Hagan's "history of unstable tumultuous relationships with others, coming from a dysfunctional family setting, living with a father who was abusive."  RT 75.  An unstable social history is specifically listed as a circumstance tending to indicate unsuitability, see 15 Cal. Code Regs. § 2402(c)(3), so it was a proper factor to consider.  In addition to Hagan's abusive father, Hagan had become involved with people engaged in criminal activity and had attributed the murder to his involvement with those people.  The presence of these facts alone would not alone support a finding that an inmate was unsuitable for parole, but it could be considered as a little bit of evidence in determining the overall

10

picture of Hagan. "Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." 15 Cal. Code Regs. § 2402(b).

### 3. Other Factors

The BPT also stated that Hagan had failed to upgrade educationally as previously recommended by an earlier BPT panel. RT 75. Hagan had taken some college courses before the crime as well as during his incarceration, but had not yet obtained his A.A. degree. The BPT also thought that Hagan had not sufficiently "participated in beneficial self-help and therapy at this time." Id. The BPT also considered Hagan's parole plans not to be viable in that his only job offer was from an employer in Antioch and he planned to live in San Mateo County, which would mean a very long commute. The BPT properly could consider these facts in support of its decision under § 2402(b), which allows the BPT to consider "any other information which bears on the prisoner's suitability for release." There was some evidence to support each of these determinations, although none of them alone would show current unsuitability. "Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." 15 Cal. Code Regs. § 2402(b).

### 4. Conclusion

The BPT noted that Hagan had various in-prison achievements, but concluded that the positive factors did not outweigh the factors discussed above showing unsuitability. The factors relied upon by the BPT in support of its determination that Hagan was not suitable for parole had some evidentiary support and were factors that could be considered in determining parole suitability. The Marin County Superior Court's rejection of Hagan's insufficient evidence claim was not contrary to or an unreasonable application of the Superintendent v. Hill some evidence standard. Hagan is not entitled to the writ on this claim.

### 2. Breach Of Plea Agreement Claim

Hagan asserts that his plea agreement was breached when the BPT denied parole

11

because he expected to be paroled as soon as he reached his minimum eligible parole date ("MEPD") in December 1998. He alleges that the district attorney's opposition to his parole as well as the BPT's consideration of pre-conviction criteria and non-criminal conduct violated the plea agreement because he was never told that the parole authority could consider that information when making a parole decision.

The breach of plea agreement claim is time-barred. "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). A habeas petition by a state prisoner challenging a decision of an administrative body, such as the BPT, is covered by the statute and the limitations period starts to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(D); Shelby v. Bartlett, 391 F.3d 1061, 1066 (9th Cir. 2003); see also Redd v. McGrath, 343 F.3d 1077, 1081-82 (9th Cir. 2003).

Here, the factual predicate or basis of Hagan's claim that his plea agreement was violated was known to him no later than December 1998. He was not paroled when his MEPD arrived in December 1998 and had been denied parole at his initial parole consideration hearing months earlier in February 1998. The February 1998 decision might have been an anticipatory breach, but certainly the actual breach occurred no later than December 1998. Further, if there was any doubt in Hagan's mind that prison officials were not living up to his parole expectations, it was removed when he was denied parole again in 2001. Hagan's claim accrued in December 1998 and he did not file his federal habeas petition within the one-year limitations period, even allowing for the time during 2004 and 2005 that his state habeas petitions were pending. He could not revive the time-barred claim by asserting that the agreement – which by his account was irrevocably breached in 1998 – was breached again in 2003, no more than one can revive a time-barred claim on a contract by alleging a new breach years after the contract was irrevocably breached.

Even if the claim was not barred by the statute of limitations, the breach of plea bargain claim has no merit. "Plea agreements are contractual in nature and are measured by

contract law standards." Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003) (quoting United States v. De la Fuente, 8 F.3d 1333, 1337 (9th Cir. 1993)). Although a criminal defendant has a due process right to enforce the terms of a plea agreement, see Santobello v. New York, 404 U.S. 257, 261-62 (1971), there is no evidence that Hagan's subjective expectations about how parole would be decided were part of the plea agreement. He has not pointed to any language in any plea agreement that shows that any particular term in his plea agreement has been breached, but instead seems to argue that he never expected parole consideration to work the way it does. Hagan's sentence upon his conviction based on a plea agreement was 25-to-life and not a straight 25 year sentence. He has received the parole considerations to which he was entitled under that agreement and sentence. The Marin County Superior Court's rejection of Hagan's breach of plea agreement claim was not an unreasonable application of or contrary to clearly established federal law as determined by the U.S. Supreme Court. See Resp. Exh. 2, pp. 3-4. Hagan's claim that his plea agreement was breached in violation of his right to due process fails.

        3.        Respondent's Motion To Strike Parts Of Traverse

Respondent has moved to strike parts of the traverse on the grounds that Hagan asserted in the traverse new claims that were not presented in the petition and for which state judicial remedies were not exhausted. Respondent objected to three parts of the traverse: (1) an effort to seek review of the more recent 2005 BPT decision, (2) an equal protection claim and (3) a claim that the some evidence standard violated Hagan's right to be free of ex post facto laws.

Respondent argues that Hagan's traverse improperly attempts to get this court to review the 2005 BPT decision in addition to the 2003 BPT decision that was the subject of the petition in Case No. C 05-2035. The court does not see the inclusion of the 2005 BPT hearing transcript as an exhibit to be an effort to assert challenges to the 2005 decision. The court would only consider the challenge to the 2003 parole decision in Case No. C 05-2035, regardless of how many later parole hearings occurred after the habeas petition was filed. In any event, the point is moot in light of Hagan's separate habeas action challenging the 2005

13

1  decision.

2  Respondent next argues that the equal protection and ex post facto claims in the
3  traverse are new and unexhausted claims about the 2003 decision.  Hagan responds that his
4  "equal protection claim goes hand in hand with due process" and that the ex post facto
5  argument is "the same argument" as his argument is the same as his argument that the some
6  evidence standard violates due process.  See Objection To Resp. Motion To Strike, p. 1.[2]

7  Prisoners in state custody who wish to challenge collaterally in federal habeas
8  proceedings either the fact or length of their confinement are required first to exhaust state
9  judicial remedies, either on direct appeal or through collateral proceedings, by presenting the
10 highest state court available with a fair opportunity to rule on the merits of each and every
11 claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c).  A claim has not been
12 fairly presented when the petitioner raised in state court only the facts supporting the claim;
13 rather, "the constitutional claim . . . inherent in those facts" must be brought to the attention
14 of the state court.  Picard v. Connor, 404 U.S. 270, 277 (1971) (citations omitted).  A claim
15 also has not been fairly presented when the claims in the federal petition and those presented
16 to the state courts arose under different federal constitutional provisions (including different
17 clauses in the same constitutional amendment, e.g., the due process and equal protection
18 clauses of the 14th Amendment).  See Brown v. Cuyler, 669 F.2d 155, 159-60 (3d Cir. 1982).
19 "[M]ere similarity of claims is insufficient to exhaust."  Duncan v. Henry, 513 U.S. 364, 366
20 (1995); Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996) (the "essentially the same"
21 standard "is no longer viable" in light of Duncan).  Hagan's equal protection and ex post facto
22 claims are unexhausted.  Because the claims are unexhausted, the court next considers
23 whether the two claims are so clearly meritless that the court can reach the merits and deny
24 them notwithstanding their unexhausted status.

25 The equal protection claim Hagan makes in his traverse has no merit.  He argues that
26 his right to equal protection was violated because not all BPT panels assigned the same
27 weight to the same factors and because the BPT has not assigned more weight to factors that
28 can be changed and less weight to factors that cannot be changed.  Traverse, p. 7.  The

14

1  allegations fail to show an equal protection violation because the basic component of an
2  equal protection violation (i.e., similarly situated people being treated differently) is missing.
3  Also, the Equal Protection Clause simply does not require that a state assign fixed numeric
4  values for different factors that go into a decision-making process.  California's parole
5  scheme which provides a non-exclusive list of factors to be considered in determining
6  whether an inmate is suitable for parole does not violate equal protection.
7        The ex post facto argument Hagan asserts in his traverse also has no merit.  He argues
8  that the use of the some evidence standard instead of a preponderance of the evidence
9  standard to review the evidentiary sufficiency in support of the BPT's decision "is an
10 'unforeseen judicial enlargement' and an ex post facto violation."  Traverse, p. 9.  When the
11 alleged change in the law is by judicial decision rather than by legislative enactment, the
12 claim does not come within the scope of the U.S. Constitution's Ex Post Facto Clause
13 because that clause applies only to legislative acts.  Instead, the claim is analyzed as a due
14 process issue under Bouie v. City of Columbia, 378 U.S. 347 (1964), which determined that
15 if a judicial construction of a criminal statute is 'unexpected and indefensible by reference to
16 the law which had been expressed prior to the conduct in issue,' [the construction] must not
17 be given retroactive effect."  Bouie, 378 U.S. at 354 (citation omitted).  The rationale of
18 Bouie and its progeny rests on the core due process concepts of notice, foreseeability, and the
19 right to fair warning of criminal penalties.  Rogers v. Tennessee, 532 U.S. 451, 459 (2001).
20 The Bouie rule against judicial expansion of a statute is not an identical twin to the ex post
21 facto rule against retroactive application of legislative changes expanding criminal laws.  See
22 Rogers, 532 U.S. at 458-61.  Thus, the inquiry regarding a judicial decision focuses on
23 whether it impeded fair warning of criminal liability rather than whether it would fall within
24 one of the categories of laws prohibited by the Ex Post Facto Clause.  Assuming arguendo
25 that the law changed as Hagan asserts, the change did not cause any notice or foreseeability
26 concerns because it had nothing to do with the liability for murder or even the penalty for
27 murder, nor did it have anything to do with the BPT's decision-making process.  Rather, the
28 alleged change concerned the standard of review a court would apply in reviewing a decision

by the BPT to determine whether the evidence was sufficient to support the decision. Furthermore, the use of the some evidence standard is not the extremely anomalous situation Hagan suggests: <u>Superintendent v. Hill</u> cited to several other cases that applied the some evidence standard in a variety of settings, so it can hardly be said that the some evidence standard is unique to prison disciplinary decisions. Neither the Ex Post Facto Clause nor the <u>Bouie</u> doctrine would warrant relief under the circumstances.

Not only were the equal protection and ex post facto claims raised in the traverse not exhausted, they did not present even colorable claims for federal relief in this case. Therefore, the court can and does deny them notwithstanding Hagan's failure to exhaust state court remedies for them. <u>See</u> 28 U.S.C. § 2254(b)(2); <u>Cassett v. Stewart</u>, 406 F.3d 614, 623-24 (9th Cir. 2005). In light of this rejection on the merits, the court will deny as unnecessary the motion to strike parts of the traverse.

B.     <u>Case No. C 06-5366 - The Challenge To The 2005 Parole Denial</u>

As noted earlier, during the pendency of the federal petition concerning the 2003 BPT hearing, Hagan had another parole hearing on June 29, 2005 at which the BPT again denied parole. Hagan filed a federal habeas petition challenging that decision in Case No. C06-5366, and the parties' briefing on that petition has recently concluded.

The transcript of the 2005 BPT hearing shows that basically the same information was covered as in the 2003 proceeding, with a few exceptions. There was a more in-depth discussion of the commitment offense. There also was a different discussion of Hagan's pre-incarceration substance abuse problem. <u>See</u> 6/29/05 RT 11-12, 16. This time, Hagan estimated he had a gram-a-day cocaine habit. <u>Compare</u> 6/29/05 RT 16 (Hagan stating he had "maybe a gram-a-day" drug habit) <u>with</u> 12/16/03 RT 15 (Hagan stating that he consumed drugs "very little. A few far and between.") Other new information was that his wife had been excluded from visiting him for a reason not attributable to him. Hagan now had job offers in San Francisco and Foster City and wanted to parole to the San Francisco Bay Area. <u>See</u> 6/26/05 RT 18, 24, 38, 43. Also, Hagan described the shooting of the victim as an accident, i.e., that he ran into the victim while he had a gun in his hand, and finished with the

robbery after the victim was shot. RT 46-47. The district attorney once again opposed parole, and elaborated on the facts of the crime, i.e., that after shooting the victim, Hagan "shut the door to the bar, dragged the victim while he was bleeding over to a safe and forced him to open a safe and continue with the robbery and in fact, the inmate did succeed in leaving with over $13,000." RT 49.

The BPT identified several factors supporting its decision to find Hagan unsuitable for parole at the 2005 hearing, i.e., the circumstances of the offense, the lack of adequate parole plans and the district attorney's opposition to parole. RT 59-61. The deficiency in the parole plans this time was that the BPT was not required to parole Hagan to a county other than the county of his last legal residence or where the crime was committed, i.e., Orange County, so the possibility of a job in San Francisco was not necessarily realistic although it was possible he could be paroled to the Bay Area. The BPT also noted that Hagan needed to continue with therapy, programming and self-help. The BPT apparently did not rely on the failure to upgrade educationally as recommended by a prior BPT panel. RT 63 ("I basically cannot instruct you to get your AA without (indiscernable)." The main reason for the denial of parole was the commitment offense; the BPT indicated Hagan needed to do more time in prison. RT 61 ("I think your (sic) close, but at this point in time I don't think that you have done sufficient time.")

The BPT relied on permissible factors and there was some evidence to support the BPT's reliance on those factors, notwithstanding Hagan's exemplary prison record. The recurring argument Hagan makes in both petitions is that the crime cannot continue to be relied upon to deny parole because he cannot change the facts of the crime. The law does not, however, require the BPT or the courts to adopt his position. Although the facts of the crime are immutable, they can continue to support the denial of the parole 20 actual years (in 2003) and 22 actual years (in 2005) into Hagan's 25-to-life sentence.

The Orange County Superior Court upheld the decision in a reasoned order. See Resp. Exh. 6. The court correctly identified the some evidence standard as the applicable standard of review and found that some evidence did support the BPT's 2005 decision.

17

1  See id. at 2-3.  The court also rejected the breach of plea agreement claim.  See id. at 3.  The
2  Orange County Superior Court's rejection of Hagan's claims was not an unreasonable
3  application of or contrary to clearly established federal law as determined by the U.S.
4  Supreme Court.  Hagan is not entitled to the writ on this petition.

## CONCLUSION

For the foregoing reasons, the petitions for writ of habeas corpus in Case No. C 05-2035 and in Case No. C 06-5366 are denied on the merits.  Respondent's motion to strike parts of the traverse in Case No. C 05-2035 is denied.  (Docket # 10.)  The clerk shall close the files.

IT IS SO ORDERED.

DATED:   March 8, 2007

Marilyn Hall Patel
United States District Judge

**NOTE**

1. The listed circumstances tending to show unsuitability for parole are the nature of the commitment offense, i.e., whether the prisoner committed the offense in "an especially heinous, atrocious or cruel manner;" the prisoner has a previous record of violence; the prisoner has an unstable social history, the prisoner previously engaged in a sadistic sexual offense, the prisoner has a lengthy history of severe mental problems related to the offense; and negative institutional behavior. 15 Cal. Code Regs. § 2402(c). The listed circumstances tending to show suitability for parole are the absence of a juvenile record, stable social history, signs of remorse, a stressful motivation for the crime, whether the prisoner suffered from battered woman's syndrome, lack of criminal history, the present age reduces the probability of recidivism, the prisoner has made realistic plans for release or developed marketable skills, and positive institutional behavior. 15 Cal. Code Regs. § 2402(d).

2. Neither party submitted the petition Hagan filed in the California Supreme Court. The absence of the document precludes this court from actually determining what claims Hagan presented to the California Supreme Court. Even though non-exhaustion is an affirmative defense, the petitioner bears the burden of proof that state judicial remedies were properly exhausted. Parker v. Kelchner, 429 F.3d 58, 62 (3d Cir. 2005); Caver v. Straub, 349 F.3d 340, 345 (6th Cir. 2003); Winck v. England, 327 F.3d 1296, 1304 n.6 (11th Cir. 2003); see Darr v. Burford, 339 U.S. 200, 218-19 (1950) ("petitioner has the burden . . . of showing that other available remedies have been exhausted"), overruled on other grounds, Fay v. Noia, 372 U.S. 391 (1963); Cartwright v. Cupp, 650 F.2d 1103, 1104 (9th Cir. 1981) (affirming summary judgment for respondent because, although petitioner alleged he had exhausted, "there is nothing in the record" to show it). Respondent would therefore prevail on the non-exhaustion argument because Hagan did not meet his burden to show exhaustion. However, the court's decision does not turn on the burden of proof, but instead on the fact that Hagan has essentially conceded non-exhaustion by his arguments that the similarity of his state court claims to his federal claims was enough to exhaust them.